*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PHIL FORNER,

        Petitioner-Appellant,

v

CONSUMERS ENERGY COMPANY,

        Respondent-Appellee,

and

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee.

UNPUBLISHED
February 19, 2025
11:32 AM

No. 368172
Public Service Commission
LC No. 00-021232

Before: GADOLA, C.J., and CAMERON and ACKERMAN, JJ.

PER CURIAM.

Petitioner Phil Forner appeals as of right the order of the Michigan Public Service Commission (MPSC) dismissing his complaint against respondent Consumers Energy Company (Consumers). We affirm.

## I. FACTS

Consumers is a public utility that offers both electric and natural gas services in Michigan, referred to as a regulated electric utility and a regulated gas utility. Consumers also offers unregulated "value-added products or services" (VAPS); one such service is the "Appliance Service Plan" (ASP). Customers who choose to enroll in the ASP pay a monthly subscription fee which covers certain equipment and appliance repairs.

Petitioner is a residential customer of Consumers' electric utility. Petitioner challenges whether Consumers' conduct regarding its ASP complied with what is known as the code of conduct provision of the Act governing the Public Service Commission, MCL 460.10ee.

-1-

Formerly, the code of conduct provision was found at MCL 460.10a.[1] The Legislature amended the statute by 2016 PA 341, creating MCL 460.10ee, which replaced former MCL 460.10a as the new code of conduct provision. The code of conduct provision governs how a utility may offer a value-added program, such as the ASP. In *In re Application of Consumers Energy Co to Increase Rates*, 339 Mich App 233, 244; 981 NW2d 525 (2021), this Court explained:

> MCL 460.10ee(1) directs the Commission to establish a code of conduct governing the interplay between a [public] utility's regulated and unregulated services. Regulated services are electric, steam, and natural gas utilities; unregulated services are value-added programs and services, which include appliance-service programs. MCL 460.10ee(16). The Commission duly promulgated a code of conduct addressing those issues. Mich. Admin. Code, R. 460.10101 to 460.10113. [*Id.*]

Consumers' ASP uses Consumers' electric utility's monthly billing and payment processing system. Petitioner contends that MCL 460.10ee requires the ASP to compensate the electric utility directly for its use of those services. Petitioner contends that Consumers' electric utility subsidized the ASP in 2018 and 2019 through the use of its billing and payment processing services, resulting in higher electric utility rates to its customers, and that as a result, he was improperly charged higher electric rates in violation of the code of conduct.

Petitioner initiated this action against Consumers alleging that in 2018-2019, Consumers' ASP failed to pay the electric utility for the ASP's proportional use of the billing and payment processing services, including postage, in violation of MCL 460.10ee(3), (8), (9), and (12). Petitioner also alleged that Consumers' 2018 Report failed to delineate between ASP costs for the electric utility versus the gas utility, and that the report's "Statement of Compliance" failed to certify that the electric utility was complying with MCL 460.10ee, which petitioner alleged violated MCL 460.10ee(15).

Petitioner has initiated essentially the same action against Consumers in the past, similarly alleging that Consumers' ASP program was impermissibly using the billing and payment processing services of the electric utility without paying its proper allocation of costs for those services. Consumers responded to petitioner's complaint in this case contending that the MPSC in prior proceedings between the parties had undertaken extensive review of the ASP Program in relation to Consumers' regulated utilities. Consumers argued that although the Legislature moved the code of conduct provision from MCL 460.10a to MCL 460.10ee, the basic requirements on which petitioner based his complaint remained the same, and that the prior decisions of the MPSC continued to apply to the new code of conduct provision.

The MPSC's Administrative Law Judge (ALJ) agreed that petitioner's claims already had been determined by the MPSC in previous cases. The ALJ issued a proposal for decision recommending that the MPSC dismiss petitioner's complaint, stating in pertinent part:

> Mr. Forner's complaint in the instant matter centers on claims that have been previously addressed by the Commission and reviewed by the Court of Appeals

---

[1] MCL 460.10a remains, but now addresses other unrelated matters.

and Michigan Supreme Court. Mr. Forner now raises these issues in the context of 2016 PA 341. As noted above, the Commission has found that 2016 PA 341 reorganized the language of MCL 460.10a (now MCL 460.10ee), but that the purpose of the statute remained the same and was clarified and strengthened by the adoption of 2016 PA 341. . . . Mr. Forner has not shown a substantive change in the language of the statute or the Code of Conduct, or a change in the cost allocation methodology employed by Consumers that would warrant revisiting previous Commission decisions addressing the same issues raised in this matter.

The ALJ noted that MCL 460.10ee did not substantively change any of the previous requirements, and that

> [t]here was no evidence presented to show that circumstances have changed such that the formula used by Consumers to allocate costs to the ASP Program for use of the utility's billing assets is obsolete or does not adequately allocate costs based on the proportional use by the ASP Program.

The ALJ concluded that petitioner did not meet his burden of showing that Consumers was improperly allocating the costs of payment processing for the ASP Program or that the electric utility was not properly compensated by the ASP. The ALJ also determined that petitioner had not presented evidence to refute Consumers' evidence that including the ASP in the monthly billing did not increase postage. Accordingly, the ALJ concluded that there were no violations of MCL 460.10ee(8) and (9), and similarly that there were no violations of MCL 460.10ee(15) related to the VAPS reports.

Petitioner filed exceptions to the ALJ's proposal for decision. Rejecting petitioner's challenges, the MPSC dismissed petitioner's complaint with prejudice. The MPSC determined that petitioner had "brought forth matters that the Commission considers to be settled," and that the MPSC was unpersuaded that 2016 PA 341 "offers substantive changes to the extent that the Commission's previous orders as discussed in this case are diminished or negated." The MPSC reasoned:

> The company's accounting and allocation (method and calculation) for the ASP was approved in the February 9 order. The Commission's decision was affirmed by the Court of Appeals and Mr. Forner's request for reconsideration was denied. *See*, *Forner v Pub Serv Comm and Consumers Energy Company*, unpublished per curiam opinion of the Court of Appeals issued February 19, 2008 (Docket No. 270941) and Order of the Court of Appeals issued April 3, 2008 (Docket No. 270941). Thus, the Respondent has fulfilled the requirements of MCL 460.10ee(6)(c) that it "maintains separate books and records for the program." The Commission finds no rule violation of MCL 460.10ee and no violation of the Code of Conduct in the Respondent's choice to operate the ASP in the gas division or in the lack of a separate ASP operated in the electric division. Additionally, the Commission finds that the ALJ's use of the word "utility" did not impede or obscure his contextual meaning in the PFD.

The MPSC found that Act 341 " 'strengthened and clarified' pre-Act [341] statutory provisions but did not substantively change the basis in law for the matters at issue in this case." The MPSC accordingly found no violations of MCL 460.10ee regarding allocation of the ASP's costs, and concluded that "there are no substantive differences in pre-Act 341 statutory requirements and post-Act 341 statutory requirements that would negate or diminish the Commission's numerous past rulings on the matters at issue in this proceeding." The MPSC thereafter denied petitioner's petition for rehearing. Petitioner now appeals.

## II. DISCUSSION

Petitioner contends that the MPSC erred by determining that Consumers did not violate the code of conduct provision. Petitioner contends that contrary to the code of conduct provision, he was improperly charged amounts by Consumers' electric utility that should have been allocated by Consumers to its ASP program. We disagree.

## A. STANDARD OF REVIEW

To be valid, a final order of the MPSC must be authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *In re Application of Consumers Energy Co*, 279 Mich App 180, 188; 756 NW2d 253 (2008). In addition, when reviewing an order of the MPSC, we refer to MCL 462.25, which provides:

> All rates, fares, charges, classification and joint rates fixed by the commission and all regulations, practices and services prescribed by the commission shall be in force and shall be prima facie, lawful and reasonable until finally found otherwise in an action brought for the purpose pursuant to the provisions of section 26 of this act, or until changed or modified by the commission as provided for in section 24 of this act.

Whether the MPSC exceeded the scope of its authority is a question of law that we review de novo. *In re Application of Consumers Energy Co for Rate Increase*, 291 Mich App 106, 109-110; 804 NW2d 574 (2010). We also review de novo issues of statutory interpretation. *Consumers Power Co v Pub Serv Comm*, 460 Mich 148, 157; 596 NW2d 126 (1999). While we respectfully consider an agency's interpretation of a statute that the agency is empowered to execute, ultimately, the statutory language itself controls. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008).

## B. THE MPSC ORDER

To challenge successfully an order of the MPSC, a party aggrieved by the order must prove by clear and satisfactory evidence that the order is unlawful or unreasonable, MCL 462.26(8), meaning that the petitioner must demonstrate that the MPSC failed to follow a statutory provision or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). In this case, petitioner failed to prove by clear and satisfactory evidence that the MPSC's order was unlawful or unreasonable.

MCL 460.10ee provides, in relevant part:

(1) The commission shall establish a code of conduct that applies to all utilities.  The code of conduct shall include, but is not limited to, measures to prevent cross-subsidization, preferential treatment, and, except as otherwise provided under this section, information sharing, between a utility's regulated electric, steam, or natural gas services and unregulated programs and services, whether those services are provided by the utility or the utility's affiliated entities. . . .

(2) A utility may offer its customers value-added programs and services if those programs or services do not harm the public interest by unduly restraining trade or competition in an unregulated market.

(3) Assets of a utility may be used in the operation of an unregulated value-added program or service if the unregulated value-added program or service compensates the utility as provided under this section for the proportional use of the assets of the utility. . . .

\* \* \*

(6) A utility offering a value-added program or service under this section shall do all of the following:

\* \* \*

(c) Maintain separate books and records for the program or service and provide an annual report to the commission showing how all of the utility's costs associated with the unregulated value-added program or service were allocated to the unregulated program or service.  The annual report shall show to what extent the utility's rates were affected by the allocations.  The utility may include this report as part of a request for rate relief.

\* \* \*

(8) All utility costs directly attributable to a value-added program or service allowed under this section shall be allocated to the program or service as required by this section.  The direct and indirect costs of all utility assets used in the operation of the program or service shall be allocated to the program or service based on the proportional use by the program or service as compared to the total use of those assets by the utility.  The cost of the program or service includes administrative and general expense loading to be determined in the same manner as the utility determines administrative and general expense loading for all of the utility's regulated and unregulated activities.

(9) A utility may include charges for its value-added programs and services offered under this section on its monthly billings to its customers if the utility complies with all of the following:

(a) The proportional share of all costs associated with the billing process, including the postage, envelopes, paper, and printing expenses, are allocated as required under subsection (8).

* * *

(12) Except as otherwise provided in this subsection, the commission shall include only the revenues received by a utility to recover costs directly attributable to a value-based program or service under subsection (8) in determining a utility's base rates. The utility shall file with the commission the percentage of additional revenues over those that are allocated to recover costs directly attributable to a value-added program or service under subsection (8) that the utility wishes to include as an offset to the utility's base rates. Following a notice and hearing, the commission shall approve or modify the amount to be included as an offset to the utility's base rates.

* * *

(15) A utility that offers value-added programs or services under this section shall file an annual report with the commission that provides a list of its offered value-added programs and services, the estimated market share occupied by each value-added program and service offered by the utility, and a detailed accounting of how the costs for the value-added programs and services were apportioned between the utility and the value-added programs and services. The utility shall certify to the commission that it is complying with the requirements of this section. . . .

(16) As used in this section:

(a) "Utility" means an electric, steam, or natural gas utility regulated by the commission.

Petitioner raises several challenges under MCL 460.10ee. He contends that MCL 460.10ee(16)(a)'s definition of "utility" changed existing law to now require that the electric and gas utilities within Consumers be treated as separate utilities. Petitioner further argues that Consumers violated MCL 460.10ee(3), (8), (9), and (12) because the ASP did not directly compensate the electric utility for the proportional uses of its assets, namely its monthly-billing services, including postage. Likewise, petitioner argues that given that the electric utility must be treated separately, Consumers violated MCL 460.10ee(15) because it failed to show in the VAPS Reports how the electric utility was compensated by the ASP.

The MPSC determined that petitioner's challenges were resolved by the MPSC in prior litigation. The MPSC was unpersuaded that 2016 PA 341 "offers substantive changes to the extent that the Commission's previous orders as discussed in this case are diminished or negated." The MPSC found that Act 341 " 'strengthened and clarified' pre-Act [341] statutory provisions but did not substantively change the basis in law for the matters at issue in this case." The Commission accordingly found "that its prior orders on the subject matter in the instant case have persuasive effect in this proceeding and the Commission finds nothing in the record that would diminish or

negate its earlier decisions and orders on the matter." We find persuasive the following reasoning of the MPSC in this case:

> The Commission is not persuaded that the definition of "utility" set forth in MCL 460.10ee(16)(a), when applied to the matters at issue in this case, means that Consumers' must operate its ASP in its electric division separately from the operation of the ASP in its gas division as argued by Mr. Forner. The purpose of MCL 460.10ee is to permit the operation of VAPS by regulated utilities in a manner that prevents the VAPS from being subsidized by the regulated utility. Consumers has made clear that it operates the ASP in its gas division and keeps the accounts in a manner that prevents subsidization of the program by either its gas division or its electric division. . . .

> \* \* \*

> The Commission finds that Consumers' operation of the ASP solely in its gas division and the accounting and allocation methods employed to ensure that neither the gas nor the electric side of the business subsidizes the ASP complies with MCL 460.10ee(8). These issues have been thoroughly addressed in previous Commission orders, as discussed above, and the Commission has found that Act 341 "strengthened and clarified" pre-Act [341] statutory provisions but did not substantively change the basis in law for the matters at issue in this case. . . .

We agree that petitioner's issues previously were resolved by the MPSC and this Court. In MPSC Case No. U-13089, petitioner filed a complaint alleging that Consumers violated the code of conduct by failing properly to allocate costs to its ASP. The MPSC granted in part petitioner's complaint, finding that Consumers had failed to properly allocate certain costs associated with Consumers' regulated billing procedures to prevent subsidizing the ASP. The MPSC ordered Consumers to file a case to determine the amounts of the subsidy created. MPSC Case No. U-13089, Opinion and Order, 02/20/2003. The MPSC thereafter imposed a market price valuation of $0.1040 per unit for the ASP's use of Consumers' billing system, but did not impose a postage cost because that cost was unaffected. MPSC Case No. U-14329, Opinion and Order, 02/09/2006. This Court affirmed the order of the MPSC regarding postage. *Forner v MPSC and Consumers Energy Co*, unpublished per curiam opinion of the Court of Appeals, issued February 19, 2008 (Docket No. 270941).

This Court similarly upheld the MPSC's rejection of petitioner's claim that Consumers was not properly allocating the costs associated with the ASP and the electric utility customers were therefore subsidizing that program. See *In re Consumers Energy*, 291 Mich App at 120-121. This Court in *In re Application of Consumers Energy to Increase Rates*, unpublished per curiam opinion of the Court of Appeals, issued October 20, 2012 (Docket Nos. 295287, 296625, 296633, 296640, 298476), again held that the MPSC had properly refused to revisit petitioner's claims of improper subsidization of the ASP by electric customers. This Court reasoned that

> Although preclusion doctrines are not strictly applied in administrative determinations of this sort, issues fully decided in earlier PSC proceedings need not

be relitigated unless new evidence or changed circumstances demonstrates that the earlier result is unreasonable. . . .

Futhermore, even if preclusion doctrines have limited application in a ratemaking case, they have full force in judicial decisions. Forner has availed himself of opportunities to raise his issues concerning the ratepayers' remedies in connection with the improper subsidization of the ASP, and the resulting decisions have been affirmed by this Court. See *In re Consumers Energy Application for Rate Increase*, 291 Mich App at 120-121; see also *Forner v Pub Serv Comm*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2008 (Docket No. 270941). [*In re Application of Consumers Energy*, unpub op 12-13.]

Although Act 341 moved the code of conduct provision from MCL 460.10a to MCL 460.10ee, the basic requirements of the code of conduct provision remain the same. This Court has held that MCL 460.10ee and former MCL 460.10a are "substantially similar." *In re Application of Consumers*, 339 Mich App at 245. As in that case, we find the similarities readily apparent,[2] and again conclude that "we need not address every subsection here." *Id*. Although petitioner contends that 2016 PA 341 represents a substantive change by the Legislature in how VAPS such as ASPs are regulated, both this Court and the MPSC have rejected this argument. Neither "the statutory language [nor] history confirm that the change is a substantive one;" rather, the language and decisions by the Commission and this Court show that 2016 PA 341 was "merely a recodification of existing law." *In re Application of Consumers*, 339 Mich App at 239.

We note that this Court in *In re Application of Consumers*, 339 Mich App at 245-246, observed that MCL 460.10ee(15) "added a requirement that a utility offering a value-added program or service must file an annual report with the Commission addressing, among other things, 'a detailed account of how the costs of the value-added programs and services were apportioned between the utility and the value-added programs and services.' " We find no error in the MPSC's determination that Consumers did not fail to comply with the annual reporting requirement, and likewise conclude that Consumers VAPS Reports were not required specifically to reference MCL 460.10ee, as petitioner contends. MCL 460.10ee(15) provides that any utility that offers ASPs "shall file an annual report with the commission that provides . . . a detailed accounting of how the costs for the value-added programs and services were apportioned between the utility and the value-added programs and services," and "certify to the commission that it is complying with the requirements of this section." *Id*. The MPSC found that petitioner did not meet his burden of proof that violations exist in either the 2018 or the 2019 VAPS reports, reasoning that the respective Statements of Compliance were sufficient and that although the

---

[2] "Compare former MCL 460.10a(4) and (5) with MCL 460.10ee(1); former 460.10a(6) with MCL 460.10ee(6) and (7); former MCL 460.10a(7) with MCL 460.10ee(8); former MCL 460.10a(8) with MCL 460.10ee(9); former MCL 460.10a(9) with MCL 460.10ee(10); former MCL 460.10a(10) with MCL 460.10ee(12); and former MCL 460.10a(11) with MCL 460.10ee(13)." *In re Application of Consumers*, 339 Mich App at 245 n 3.

statements did not explicitly reference MCL 460.10ee, the statements provided all required information.

The evidence amply supports the MPSC's finding that the reports complied with MCL 460.10ee(15). Consumers' witnesses testified that the VAPS Reports showed the costs allocated from Consumers Energy to the ASP, and showed the allocated costs for the ASP for its proportional use of both the monthly billing and payment processing. The unrebutted evidence showed that the VAPS Reports provided "a detailed accounting of how the costs for the value-added programs and services were apportioned between the utility and the value-added programs and services." MCL 460.10ee(15).[3]

Petitioner has failed to overcome his burden of proving by clear and satisfactory evidence that the MPSC's order was unlawful or unreasonable. As both the MPSC and this Court have already concluded, 2016 PA 341 did not substantively alter existing law to the extent that would negate the many prior decisions on the issues raised in this proceeding.

Affirmed.[4]

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Matthew S. Ackerman

---

[3] Petitioner's argument that the revised definition of "Utility" in Public Act 341 means the electric and gas utilities within Consumers must be treated as separate utilities is specious. MCL 460.10ee(16)(a) defines "Utility" to mean an "electric, steam, or natural gas utility regulated by the commission," Because Consumers operates both an electric and natural gas utility, it qualifies as a "Utility" (singular) under this statutory definition.

[4] The issues Petitioner raises in this appeal have now been considered and determined by both the Commission and this Court on multiple occasions. Petitioner may wish to consider the language of MCR 7.216(C) before initiating another appeal in this Court involving the same questions addressed both in this opinion and previously.